In the next case on for argument is United States v. Brooks. Good morning, Mr. Perez. May it please the Court, I know the Court has a very heavy calendar today. I don't know that I need to take up all of my time. I want to focus on one particular issue this morning, and that is with respect to the first charge of the violation. The finding by the district court that the government had sustained its burden by a preponderance of the evidence that Mr. Brooks had committed another crime, that being attempted murder under South Carolina law. What do we do with the fact that he ended up being convicted, as I understand it? And please correct me if I'm incorrect on that. Pursuant to a plea agreement. He did, and what he was convicted of is assault and battery, and he was sentenced to time served. So to have a record, especially for this kind of defendant, who is not a stranger to the criminal justice system, who one might imagine will not be a stranger going forward, that there was a finding that he had committed attempted murder, when that may have been the original charge, but what he pled guilty to, what he was convicted of, was assault and battery, and he received time served. That, at a minimum, should be cured. With respect to the other issues, the self-defense issues, the issues that we had raised in our brief, I'd be happy to submit on our papers. I don't feel rushed by what I said at the outset. So please, I mean, if you have other things you would like to say to us. Well, I can certainly, if the court has any questions with respect to the arguments that were put forward by Mr. Brooks regarding self-defense, I mean, there was a fairly fulsome, not only did he testify himself at the violation of supervised release hearing, but there were also these six witnesses who corroborated substantial portions of his testimony. For instance, there was really no question that this assailant, this Nesbitt individual, came at another individual with a 40-ounce bottle, attacked that individual and hit him in the head and caused him substantial injury, and then turned toward Mr. Brooks. As he was coming toward Mr. Brooks, he made certain threatening statements to Mr. Brooks, putting Mr. Brooks in a position where he felt he had to defend himself. But Judge Arizari rejected the self-defense claims of your client, right? Understood, and it is our position, for what it's worth, it is our position that that was an abuse of discretion, Your Honor. But that would be that he made a factual finding that he could have left the scene when the victim became belligerent. Are you saying that the facts would not support that factual finding? I am, Your Honor. How would they not have supported the he could have left the scene finding that Judge Arizari made? Well, I think that the record fairly suggests, particularly the testimony offered by the six eyewitnesses, that when Nesbitt came up toófirst of all, that this was an incident that transpired over a very quick period of time, and that when Nesbitt came upon Brooks, there was not an adequate opportunity of Brooks to flee or to do anything other than to try to get that gun that Nesbitt was approaching him with away from Nesbitt. There was, I think, either a scuffle or, as Brooks called it, a tussle over the gun. And fortunately, Mr. Brooks, at least from Mr. Brooks's standpoint, was able to get the gun away from his assailant. But I don't think there was an adequate opportunity for Mr. Brooks to retreat under the circumstances, nor under South Carolina law did he have an obligation to do so. Let me be sure I understand this. If Judge Arizari thought that when she saw him attacking the other person, he should have left the scene, not stayed there, and are you saying there wasn't enough time as he's watching the other fellow be bashed on the head for him to, you know, move away from the scene? He could have, but that's not when he committedóthat's not the crime that he committed. The crime that he committed was assault and battery, and that was after that initial incident had taken place. Right. Judge Arizari's point was that he should not have stayed at the scene. Now, those are the facts that support her conclusion. I thought you just agreed that, yes, it would support that he had enough time to leave at that opportunity, right? Well, had he left at that opportunity, then obviously none of this takes place. But he was still there at the point in time that this assailant turned his focus on Mr. Brooks, and that is the point in time that Mr. Brooks had to defend himself, was charged with attempted murder, and again, just to come back to my original point, if nothing else, the record should be corrected because he did not plead guilty and was not convicted of attempted murder. It was assault and battery, which is a much lower crime for which he received time served. But there's two other violations, right? Yes, there are. And Judge Arizari gave 24 months on all of them, right? That is correct. That is correct. And so is there an argument that it's just sort of harmless, that she would have given him 24 months regardless? I think with all due respect, Judge Sullivan, at this point, since Mr. Brooks has already discharged his term of imprisonment, I think any further action at this point is kind of moot. Is moot? Moot. He's out. He's served his sentence of imprisonment. Thank you. I'm sorry, before you stand, so what you want is vacator of the violation on that ground? No, I will rest on my papers with respect to all of our arguments. I'm not conceding anything for the purpose of this morning. Focus was just on the assault and battery this morning. Thank you, Your Honor.  You've reserved three minutes for rebuttal. May it please the Court. Nicholas Moskow for the United States. Judge Arizari ruled that the defendant had violated a supervised release in three different ways, and each one of those ways has evidence in the record to support it sufficient at this stage. The defendant did not plead guilty to attempted murder in South Carolina. However, that's not a reason that Judge Arizari could not find that the defendant committed the crime of attempted murder. What are the elements for attempted murder in South Carolina? Your Honor, the elements of attempted murder in South Carolina do, as the defendant has contended, include the specific intent to kill, and that's the element that's at issue on this appeal. However, courts have regularly held that a specific intent to kill can be inferred from action, and it's standard that we would infer a defendant's intent from his actions. In this case, the action from which the specific intent to kill can be inferred and should be inferred is his shooting the 16-year-old victim in the chest, requiring surgery at a trauma center. But did Judge Arizari make findings about the elements under South Carolina law? Did she even state the elements under South Carolina law? No, Your Honor. Is that a problem?  It's fairly typical of supervised release proceedings, Your Honor, for the judge to find that someone has committed it, and that includes a finding as to the elements necessarily. The judge had promised opinions specifically describing what would happen in this case. However, the defendant insisted on having his sentencing proceeding expedited. If I understand your position, it's that shooting someone when, as Judge Arizari found, you had an opportunity to leave so as not to be in a self-defense situation, indicates that the shooting was with intent to kill? Is that your theory here? Specifically, shooting someone in the chest, Your Honor, is a fact from which a court could reasonably infer an intent to kill, and that's something that courts have held with some consistency. Regardless of whether it was self-defense? Your Honor, in this case, the judge specifically found that she did not credit the self-defense. I understand that, but I'm trying to understand your theory. Is it your theory that shooting someone in the chest, no matter what precipitated it, is an intent to kill? Deliberately shooting someone in the chest of evidence is an intent to kill, Your Honor. Even if it's self-defense? One can kill in self-defense, Your Honor. I'm just trying to understand what you're saying occurred here, because I just asked you whether it was because Judge Arizari didn't find self-defense that implicit in that is that when he shot, he intended to kill, and I thought you said to me shooting in the chest is always an intent to kill. I just want to understand the government's position. Your Honor, our position, we would take both positions. First, that even in a self-defense context, one can have an intent to kill that is evidenced by shooting someone in the chest, but that that context is not applicable here, where the shooting was not in self-defense, where the story that the defendant concocted about a tussle for the gun was not credited by the judge, where the many inconsistencies in the defendant's testimony led the judge specifically to discredit his testimony. He discredited his testimony. It wasn't clear to me whose testimony she did credit. It wasn't clear what witnesses who were hearsay witnesses she credited and found were believable and how that supported each of the elements for an attempted murder charge. The defendant didn't plead to attempted murder, so she couldn't rely on that. The defendant did not plead guilty to attempted murder, and it doesn't appear that she relied on that. She did credit his plea to some extent, and insofar as self-defense is also a defense to first-degree assault and battery, she could have credited his plea insofar as it defeated the one defense that he presented at trial, which did not address the issue of specific intent. It seems like we're just teasing out from the record as best we can whether we can justify this finding, but isn't that just too quick and too dirty for this process, even for a violation of supervised release? Your Honor, she did have ample evidence in the record to make the finding of specific intent. She didn't make the finding, though, right? Well, I would disagree. Where did she make the finding? In the judgment that holds that the defendant committed the crime of attempted murder, she made the finding that he had the specific intent to kill. By virtue of the holding. By virtue of the holding. And in United States v. Ashburn, Judge Garifas held that shooting a firearm at close range evidence is an intent to kill. He collects cases from New York courts which regularly hold that. In United States v. Cooper, 210 F. 3rd 386, the Ninth Circuit held that you could infer an intent to kill from shooting someone. In this case, while Chief Judge Irizarry didn't make it clear which of the hearsay reports she was crediting in all circumstances, she did credit the report that someone said, you shot a kid, and the defendant responded along the lines of, I don't care how old he was, he came at me with a bottle. These findings are sufficient in light of the fact that the defendant shot his victim in the chest to find that the defendant intended to kill the victim. Even if he did not, this court has held in United States v. Bald, 117 Federal Appendix 151, that there was no prejudice for failing to raise a technical error as to which of several crimes the defendant may have committed, because had that in fact been raised, the government could have simply amended the report to reflect the proper crime. In this case, the proper crime to which the defendant pled guilty, and which this court should find the defendant committed if he did not commit attempted murder, is first degree assault and battery, which is also a violent crime, which is also a grade A violation, and which would have led to the same conclusion. So insofar as this court is inclined to find . . . Maybe a different sentence, right? No, Your Honor. The facts underlying the sentence are the same, regardless of whether or not the elements of South Carolina law classify them as one crime versus another. And Chief Judge Irizarry's guidelines analysis would have been the same. The sentence would have been the same. But she didn't say that. She didn't say, whether we call this assault and battery or whether we call this attempted murder, I would sentence you to the same sentence. People do that sometimes. Judges do that. But she didn't do that. No, Your Honor. Although in the statement of reasons she did say that the facts and circumstances of the case and the history and characteristics of the defendant were the motivating factors behind the sentence, those would remain unchanged whether we classify the defendants having shot the 16-year-old as an assault or as an attempted murder. Irrespective of that, courts have . . . And as Your Honor pointed out, she also imposed a concurrent sentence as to the other two counts, the possession of a firearm by a previously convicted felon and possession of a firearm. She imposed the same sentence there. So even were charge one to drop away altogether, the court could simply assume that she would impose the same sentence on the other two charges. Although your adversary argues, at least on the papers, that she obviously, or at least it may well be that she took her conclusions with respect to the first charge, which on your hypothetical drops away, and that may have had an influence on what she imposed on the second and third. Yes, Your Honor. However, in this case in which the facts, again, would remain unchanged irrespective of the finding of whether or not it violates the statute, it's unlikely that it would drop away. Other courts in United States v. DeLoach, the Eleventh Circuit, 649 Federal Appendix 857, held that where one charge was not supported, the sentence was the same. Therefore, the district court's decision was affirmed. Similarly, the Fifth Circuit in United States v. Brown, 656 Federal Reporter 2nd, 1204, declined to consider the sufficiency of evidence on other charges. What's our standard of review with respect to this latter analysis that we're talking about? To which analysis, Your Honor? This latter analysis that we're talking about right now, that nothing would have changed. Your Honor, I don't understand the standard of review with respect to whether or not the sentence would have changed. However, under any standard of review in this case, in light of the judges having imposed the concurrent sentences and in light of the facts and circumstances remaining unchanged, irrespective of the statute. You haven't said in any number of cases that for us to assume that it wouldn't change, the judge has to have made a pretty clear statement to that effect? Your Honor, once again, in this case, the judge's statement to the effect that this Court can interpret. Isn't that the law in this circuit, that for us to assume that an error wouldn't have affected a sentence, we have to conclude that the – we have to find that the judge pretty clearly said it. As Judge Sullivan was saying to you, where judges say, you know, either way I would be imposing a 24-month sentence. Yes, Your Honor. That's not here. That's not present here. That's more applicable in the context of standard criminal proceedings. I'm unaware of the Court's jurisprudence on that, specifically in the context of violations of supervised release. Why would it be any different? In this case, Your Honor, well, it could be different in theory because the guidelines for supervised release operate differently and because, again, here, well, it wouldn't necessarily be different. In this case or in other cases in which the error is a technical error and not an error that leads to some sort of difference in the guidelines analysis, the ultimate decision-making process of the judge as to what sentence is appropriate under the 3553A factors, which were considered on the record in this case, would remain unchanged. The only thing that would change is the specific checkbox on the Statement of Reasons form. So unlike in cases in which the sentence that's being reflected is supposed to – the supervised release statute specifically describes different considerations in the context of sentencing, doesn't point to all 3553A factors, and doesn't point to the same considerations. Here the judge adequately considered everything, and, again, the specific problem, the specific flaw alleged by the defendant in the sentence – sorry, in the hearing was a lack of finding as to specific intent. Whether or not that finding was made, the judge imposed a sentence that reflected the seriousness of the defendant's conduct, either with that finding as part of her decision-making process, in which case there's adequate finding to support that he committed attempted murder, or without that finding, in which case – But she didn't say that. No, Your Honor, but either she did make the finding, and there's an adequate basis to support a finding that he committed the crime of attempted murder, or she didn't make the finding, in which case the sentence is predicated on a series of facts in which that finding wasn't made. So in either scenario, the sentence would remain unchanged, irrespective of whether the checkbox is unchecked. Okay. Thank you. Thank you, Mr. Moskow. Mr. Perez? Unless the court has any questions for me, I will submit. Thank you very much. Thank you. We'll reserve decision in this case. Your Honor, I'm sorry, I can't hear you. I still can't hear you, Mr. Brooks. Paul, could you just ask Mr. Brooks to talk to the security officer, please, to our courtroom officer? Counsel? Counsel? Counsel waved. Oh, oh. Right. I think the way to handle this is, Mr. Perez, maybe you could have a conv- Sorry, Mr. Brooks is still your client. Yes. Perhaps you could have a conversation with Mr. Brooks, and we'll give you, if you could do this next week sometime, submit a letter, or further inform us if there is something more that Mr. Brooks would like, and that you as his counsel would submit on his behalf. We appreciate that opportunity, Your Honor. Thank you. And we'll reserve decision until we have heard that.  Mr. Brooks, you're counsel. I will do so. Thank you. All right. The next case on for argument, let me ask, is Mr. Woodworth arrived yet? All right. So for counsel in Hazelwood versus Highland Hospital, you're here for the hospital? Yes. All right. Mr. Woodworth apparently is stuck in traffic, as several of you may have been on your way over here. So when he gets here, we'll hear the argument. We'll not let you go without that. Okay.